All rise. This court is now in session. You may be seated. The clerk will call the next case. Mr. Bansky, you may proceed. Thank you, Your Honor. May it please the court and counsel, I am here on behalf of the defendant Aaron Holley. From the indictment to the evidence presented at trial, from the closing arguments to the jury instructions, this case is fraught with serious flaws. Flaws that should have been presented and raised by defendant's appellate counsel on the first appeal. Flaws which defendant requests that this court remedy. The nature of defendant's claims all revolve around the ineffectiveness of defendant's appellate counsel on direct appeal. That appellate counsel is ineffective for three reasons. First, they fail to raise the rape shield issue present in this case. Second, they fail to challenge both the fatal and prejudicial defect in the indictment. And three, fail to challenge the defendant's conviction. Let's start with the rape shield act issue. During closing arguments in this case, the state specifically argued that PV may have confused semen from moisture or powder. In order to explain away the complete lack of DNA evidence in this case. That combined with the testimony of PV and the state's questioning on redirect, the state in a sense painted a portrait of PV that she was a young 16 year old who was sexually inexperienced and specifically unable to identify the presence of semen. The presence or consistency of semen. Confusing it instead with, as I stated, moisture or powder. Evidence negating PV's lack of sexual knowledge is relevant to this case. Not just collateral, but directly relevant in this case. And appellate counsel was ineffective for not raising this issue during the direct appeal. The jury, in the words I guess of the case in Sandoval, on page 177, the jury presented an image of a completely unbelievable portrait of the complainant PV. And therefore, the evidence of PV's sexual activity, specifically the fact that PV had a child, is relevant in this case. Considering all of the issues that were at trial, the testimony, the closing argument, that issue of PV's child was relevant. And the rape shield issue should not have barred that evidence from coming in. The appellate counsel was ineffective for failing to raise it. The evidence in this case is extremely close. The testimony of the victim. The testimony of the defendant. The defendant denied in this case having committed this horrendous crime. There is no DNA evidence. On top of it, they searched the car where this incident took place. Again, no evidence within the car. The closely balanced nature of this case, along with the fact that really the rape shield issue was a meritorious issue, would lead to the conclusion that appellate counsel, the appellate defender, was ineffective for raising it under a Strickland analysis. And therefore, the defendant asks that this panel reverse the defendant's conviction and remand the case for further proceedings, predominantly because this issue was not raised and needs to be presented at a trial. Second, the indictment in this case is fairly flawed. I understand that this court has already determined in the opinion of the second appeal that Aaron Hall was convicted under the statute despite the fact that the charging instrument was incorrectly stated. That said, though, in the second appeal, this court did not address the ineffective assistance of counsel claim that was raised by a defendant at that time. The ineffectiveness being the appellate counsel was ineffective for failing to raise at the direct appeal this issue with the indictment, the fatal flaw with the indictment. The defendant argues that based on what the concurring opinion for Judge Wright of this court said, that this fatal flaw was substantive in the sense that you have a provision which allowed for additional penalty being amended from the 1998 to the 2000 statute as stated in Judge Wright's concurring opinion in that case. You have an issue with regards to an additional penalty being imposed for conviction under section A8. This alone is important for the defendant in making a decision as to how to present his defense, how to plea, if not to plea, knowing that there's an additional five years of sentencing that he could receive if he decided to take it to trial. But that issue, the charging instrument, we considered it in conjunction with the sentencing. Yes, Your Honor. So why isn't it barred now? Your Honor, I argue it's not barred based on the fact that I don't think the defendant had the appropriate opportunity to raise the prejudice. So I argue it's a substantive defect. I understand this court has stated that it is a formal defect. Prejudice then needs to be argued in order for a formal defect to be an issue in a case. The defendant, I argue, has not been offered the proper opportunity to argue the prejudice that occurred as a result of the formal defect. That prejudice would have probably been argued by the appellate defender, the appellate counsel, whoever the appellate counsel was at the first direct appeal. So the ineffectiveness still remains an issue. And in fact, under the Strickland analysis, the fact that there was a judge on this panel that saw this as an issue advances the argument that there was a potential for it to be successful at the appeal, the direct appeal, the first appeal. And in addition, the defendant was prejudiced under the Strickland analysis. It wasn't successful in the second appeal. No, Your Honor. That was the ruling. Yes, Your Honor. I understand. But the ineffective assistance claim that was brought during the second appeal was not ruled upon. Dealing with the similar, the ineffectiveness, in a sense, the argument is the defendant was never afforded the opportunity to explain the requisite prejudice that occurred as a result of the failure to properly charge him in the direct appeal where it would have mattered for the purposes of the appellate counsel and the effectiveness of his counsel. And finally, nobody raised, in a sense in this case, a challenge to Aaron Hawley's conviction that he was not found guilty beyond a reasonable doubt. I understand that the post-conviction counsel, at the post-conviction stage, I mean prior to the post-conviction stage, after it was remanded after the first direct appeal, I understand this is, there's a lot going on back and forth, so hopefully that was clear. After the first direct appeal, it was remanded back to the trial court. At that time, the counsel raised this issue of beyond a reasonable doubt based on the concurring opinion from Judge Wright, questioning the validity of Aaron Hawley's conviction. That claim for challenging the beyond a reasonable doubt of the conviction was then dropped at the post-conviction stage when it should have been raised in an ineffective assistance claim for the appellate counsel on the direct appeal. The appellate counsel at the direct appeal failed to raise that beyond a reasonable doubt. That said, the box in the box, when it comes down to it, you have here a sexual assault that took place over the course of an hour as testified by the complainant, PB. There was no trauma or DNA evidence supporting the claim by the claimant, PB. The time limit, there was just testimony by PB and testimony by the defendant. That alone should have necessitated a claim, a challenge, for the beyond a reasonable doubt. And in fact, this is the defendant's last opportunity to raise that challenge. From now on, he would be barred and in a sense prevented from ever raising that. And that should be addressed. I don't think Aaron Hawley was convicted beyond a reasonable doubt. And as such, the defendant asks for you to remedy the situation in reverse. Let me ask you to back up a second to the rape your first issue. Okay, she testified that she didn't change her underwear and went to the hospital and had a rape field kit, right? Yes, your honor. And they didn't find any semen? Yes, your honor. Okay, so no DNA, no semen, right? So what is the possible relevance of whether or not, since she testified it was on her and the test showed it wasn't, so what is the possible relevance of whether or not she knew what semen looked like? Well, your honor... How would that change anything? Well, again, your honor, I argue that the state, in its argument, in its case, was putting the 16-year-old up as somebody who was sexually innocent. It would change to the sense that this evidence, and also the idea that they've said that she confused it with moisture or powder or so forth. But so what? But the defense argument is, it doesn't matter what she confused what with, is there was no semen found. So whether she knew what it looked... I'm trying to make the link between that and whether or not the import of whether she knew what semen looked like or not. Well, the evidence of what if she knew what semen looked like would obviously have gone towards an argument that she isn't somebody who has no idea what the consistency or whether it's present or not. She would know what it is, and in a sense, she would be fabricating a story to the jury as to what had happened. Well, didn't they already have that argument by the fact that she said this happened, and they said she went to the hospital, there was a rape kit, and there was none found? Yes, Judge, but I think based on what the state, in arguing this, is trying to do or tried to do, was say, listen, we have a 16-year-old who is completely innocent, she doesn't know what these things are, she's made a mistake, she doesn't know what this is, she's completely unfamiliar with this, when in fact she was sexually active. But she testified that she did, she was asked if she knew what it was, and she said yes, that she knew what ejaculation was, and she testified, right? Well, she testified and asked what ejaculation means, versus what ejaculation means and what ejaculation is, I think there's a difference, and especially her experience with it is also very relevant, and the defendant was afforded a chance to cross-examine her on her knowledge of what sexual activity she has had. But there wasn't any ejaculate found in the test, right? Yes. So what's the difference, whether she knew or didn't know? Well, she reported it to the nurse upon the administration of the rape kit, that she had both semen within her and was on the suprapubic bone. And the test showed she didn't, right? Well, then, judge, yes. Am I right? No, yes, you're right. So what's the difference? I mean, the fact is, for the defendant, it doesn't matter what she said, you know, she said there was, and here the test shows there wasn't, which is evidence that they didn't do it. I mean, I don't see how that strengthens her argument one iota to say that she knows what... Judge, well, I understand your reservations. The argument is that defendant was unable to present his case. The relevance, as I said, is the picture that is painted of the girl as being sexually innocent to the jury by the state. And the relevance of the evidence... Whether she's sexually innocent or not, what does that have to do with whether she's fabricating this story? I mean, I suppose virgins can make up a story as well as sexually experienced women can make up stories about whether or not they were raped. So how does whether she had sexual experience have one thing or another to do with whether she was lying about the test? Judge, it... I just can't connect those dots, so I'm asking if you can help me. Sure. Well, the question that was raised to the jury is whether or not... Well, no, what was argued at the jury was here you have the complainant, PB, who is completely oblivious to what had occurred to her, and therefore there's a reason why there's no evidence of DNA. There's a reason now, because she doesn't know what this is. And she's innocent, and I'm just... And therefore, there's this question left that, in fact, I know that potentially there is a dot to connect, and it's not an easy dot to connect between what your question is and what my argument is. The test, though, is... Well, the relevance of it is explaining to the jury that, in fact, there is a reason potentially why there's no DNA evidence is because this event did not happen. Thank you. Did they use the word she's a young innocent in the closing argument? No, Your Honor. No. They did not. They were just talking about whether or not she really knew for sure if there was an ejaculation or not, right? Yes, Your Honor. That's correct. And redirect, she was even asked, you know, are you sure? And they said something like that, and she said no. But you think something happened? Yes. I mean, that was in the redirect examination that she was on the stand, right? Yes. The questions specifically were did you know for sure if they ejaculated inside of you in which you replied no? And the follow-up question was, but you weren't sure if they hadn't? And she said right. That is correct, Judge. So what you want to put in, in contrary to the Rape Shield Act, you think that this is an exception to the Rape Shield Law because you want to put in that she gave birth to a child when she was 16, right? Judge, I'm not asking, I'm already asking for what the courts have said is an exception, that knowledge of sexual activity when an issue in the case is relevant. In the Anthony Roy case, I understand that the facts are distinguishable, but in the Anthony Roy case, the court says there's a natural presumption that children are sexually innocent. I understand in that case it was a 12-year-old. Here we have a 16-year-old. I understand four years is different. There's a difference. But I think that presumption still exists. And this knowledge that should have been presented to the jury was relevant and appropriate, and it was error not at least making the argument that it should have been allowed by the counsel at the direct appeal. Thank you, Your Honors. Thank you. Mr. Basket, Mr. Knizovic. May it please the court, counsel. What we have in this appeal is we have three attacks on appellate counsel Robert Agostinelli's representation of defendant on direct appeal. The issue, first time I've ever seen this, in all three issues they have a different standard of review. The first issue went to a third stage hearing, so it's manifest error. That's the issue concerning rape shield. The second issue that deals with the charge of instrument was dismissed at the second stage, so that's de novo. And the third issue that deals with the ineffective assistance of post-condition counsel tries to determine whether or not counsel provided the reasonable level of assistance. What I'm going to take into account, I'm going to deal with issues two and three first. Because both of those, I think, can be readily disposed of under the document theory of race and color. The problem that we have with counsel is trying to argue here is petitioner has not had a chance to take and fully litigate whether or not Mr. Agostinelli was ineffective. When we look at ineffective assistance and trying to determine whether counsel's representation was reasonable and whether the defendant was prejudiced, what we have to look at is what is the issue that's claimed to have been overlooked. Because appellate counsel does not have to raise every conceivable issue. And if the issue is meritless, then of course appellate counsel cannot be found ineffective for not raising what is basically a baseless issue. The other problem that appellate counsel for petitioner has here this afternoon is this court's second opinion, second rule 23 order in this case. An appeal from the remand. In that case, what the defendant raised and argued was reasonable doubt. Try to take and raise also an issue concerning the charging instrument. Although this court said we cannot determine ineffective assistance issue with respect to the charging instrument because that issue was beyond this court's mandate on remand. Of course, mandate on remand was simply to take and re-sentence it under the proper statute because he had been sentenced with a 10-year add-on under 8-1, when in fact it should have been charged under 8-8, which required a 15-year add-on. So what this court did is even though the court said we can't address the ineffective assistance based on the charging instrument, what this court nonetheless did is in handling the sentencing issue, this is what the court ultimately said. This miscitation to subsection A-1 rather than A-8 was a formal defect. The indictment properly notified defendant of the elements of the charge against him. Furthermore, as this court noted in our previous opinion in this case, the record clearly shows that the weapon displayed by the defendant is a firearm. Thus, we reject the defendant's assertion that he was not properly charged with or proved guilty of aggravated criminal sexual assault. So in essence, what this court has done is with respect to the charging instrument, you have found that it is a formal defect. If it is indeed a formal defect, then Mr. Gustinelli cannot be ineffective for not having raised it because it's not prejudicial. It's not a problem. He was properly charged. He was aware of the elements of defense, the purpose of defense, as well as the fact that he could also assert that as a bar on double jeopardy. As far as reasonable doubt, this court also found that he was proved guilty beyond a reasonable doubt based on the evidence. So as far as the ineffective assistance of post-conviction counsel for not having raised the ineffective assistance of appellate counsel on direct appeal, for not having raised the reasonable doubt issue, that has been settled by this court as well. So as far as issues two and three are concerned, obviously Mr. Gustinelli cannot be found to have rendered ineffective assistance because the underlying issues are both narrow. So turning attention now to the first issue, which is the rape shield statute. The rape shield statute prohibits the admission or introduction into evidence of a victim's prior sexual history or reputation. There are two exceptions to that. One is that evidence of the prior sexual activity on behalf of the victim is necessary in order to show consent. Well that exception is out because the defendant in this case, the petitioner in this case, never argued consent. The argument was, I didn't do it. So the second exception is the fact that evidence of the victim's prior sexual past is admissible because it is constitutionally required. Admission, evidence of the victim's prior sexual past is admissible and escapes application if it is constitutionally required. Constitutionally required mandates that, first of all, although it's supposed to be fairly, it is to be narrowly construed. That requires that simply because something is relevant does not make it constitutionally mandated. It must be germane to the defense. It must be germane to the defense and or to prove the defendant's theory of the case. As your honor asked counsel, trying to connect the dots between the evidence of the fact that this victim testified that one of the assailants had ejaculated and the fact that the defendant needs to prove it, trying to connect the dots between that and the fact that this victim had a child, the problem is you can't connect those dots. There's no way. Evidence of the fact that this victim had a child has absolutely no relevancy, nothing germane to the fact that the defendant didn't do it. It does not prove that this defendant was charged with aggravated criminal sexual assault, with penetration of the victim against her will by force with the use of a gun. The fact that this victim had a child absolutely addresses none of those elements. It doesn't disprove any of those elements. It doesn't have to prove or disprove by itself, right? No, it does not. Does it make something more or less likely? True, but the fact that she had a child does not mean that she was not sexually assaulted. It doesn't add to the defense, is what I'm saying. Not necessarily that the defendant has to prove his innocence. I don't want that to be misconstrued. But it's just the whole idea that there's absolutely no relevance to this at all. There's no connection. Because, again, as your Honor pointed out, if you're looking at credibility, you cannot collaterally use a past sexual conduct to judge a victim's credibility. The point of the matter is the fact that credibility is going to be decided as in any other case, regardless of past activity, et cetera, with respect to the victim. And in this particular case, the fact that she had a child has absolutely no bearing on whether or not she was truthful. It has no bearing on anything. And so, as a result, Mr. Agostinelli made the determination. He made the decision. And he testified to this at the third stage hearing. You know, as he was being questioned, counsel, he basically said, I understand what you're saying, but I disagree with you just as you disagree with me in not raising it. I don't think it was relevant. I don't think it was an issue in the case. And he decided and defended his position not to take and raise it. I don't think that, on this record, with his testimony, in conjunction with the defense that was raised in this case, in connection with the type of evidence that they were seeking to admit, that being that this victim had a child, I don't think that the trial judge's decision in this case, finding Mr. Agostinelli credible, finding his decision to be a proper professional judgment in this case, is manifestly erroneous. As a result, we would request this court to affirm the third stage finding by the trial judge and to affirm the petitioner's conviction and sentence as employed. If there are any questions, I'll be happy to respond. I don't see any, Mr. Genetovic. Thank you. Thank you, Mr. Grafke, for rebuttal. Judge, obviously I restate, obviously, the positions that I've raised. I won't, obviously, belabor the point. I know if there's any questions, Your Honor, I'd be happy to address any questions that you may have. Defendant was not given the opportunity to fully try his case with the information that would have been relevant, and that relevancy comes from the knowledge of the sexual activity, which is allowed by case law, People v. Mason, specifically. Thank you, judges. Thank you, Mr. Grafke. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. Right now, we're staying in a brief recess for a panel discussion. All rise. This court stands in recess.